UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
EISAI LTD., et al., :
:
Plaintiffs, :
: 03 Civ. 9053 (GEL)
-v.- :
: **OPINION AND ORDER**
DR. REDDY'S LABORATORIES, INC., et al., :
:
Defendants. :
:
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/21/05

Robert L. Baechtold, Fitzpatrick, Cella, Harper & Scinto, New York, NY (Joseph M. O'Malley, Bruce M. Wexler, Fitzpatrick, Cella, Harper & Scinto; David B. Tulchin, James T. Williams, Bradley A. Harsch, Sullivan & Cromwell LLP, New York, NY, of counsel), for Plaintiffs.

Louis H. Weinstein, Budd Larner, P.C., Short Hills, NY (Maurice B. Ross, of counsel), for Defendants.

GERARD E. LYNCH, District Judge:

In this patent infringement case, plaintiffs Eisai Ltd. and Eisai Inc. (collectively, "Eisai") have withheld a number of documents sought by defendants, asserting that they are protected by attorney-client privilege. Defendants Dr. Reddy's Laboratories Ltd. and Dr. Reddy's Laboratories, Inc. (collectively, "Reddy") moved to compel. The Court referred the dispute to the Hon. Kevin Nathaniel Fox, United States Magistrate Judge, for resolution. Judge Fox ruled, among other things, that documents reflecting legal advice provided by Japanese *benrishi* or requests for such advice are privileged and need not be produced. (Order of October 28, 2005 ("Order").) Reddy appeals that determination. Reddy's objections to Judge Fox's rulings are overruled, Judge Fox's ruling affirmed, and Eisai's claim of privilege sustained.

Under Fed. R. Civ. P. 72(a), a District Court may set aside a Magistrate Judge's determination on a "[n]ondispositive [m]atter[]" only if that determination is "clearly erroneous or contrary to law." Discovery rulings, including those regarding privilege issues, are nondispositive matters subject to that standard of review. Tompkins v. R.J. Reynolds Tobacco Co., 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000).

The principal issue raised by this dispute is whether the United States courts should recognize a privilege in documents reflecting legal advice provided by Japanese legal professionals known as *benrishi* or requests for such advice.[1] *Benrishi* act essentially as patent agents or patent prosecution attorneys (Ross. Decl., Ex. D, Suzuki Aff. ¶ 7); they may represent clients in the prosecution of patents and other intellectual property rights before the Japanese Patent Office, advise clients on contracts relating to intellectual property rights, and assist Japanese attorneys, known as *bengoshi*, in representing clients in intellectual property litigation. (Id. ¶¶ 3-4, 7; Ross Decl., Ex. C, Masuda et al. Aff. ¶ 8, Ross Decl., Ex. E, Katayama Decl. ¶¶ 4-5). Judge Fox ruled that Japanese law accords such a privilege, which American courts should respect as a matter of comity. (Order at 8-10.) His decision in this regard is in accord with that of every federal court that has considered the question since a change in the Japanese statutes on the subject in 1998. Knoll Pharms. Co. v. Teva Pharms. USA, Inc., No. 01 C 1646, 2004 WL

---

[1] Reddy also objects to Judge Fox's ruling that certain documents omitted from Eisai's revised privilege log are either outside the scope of Reddy's discovery demands or insufficiently relevant to warrant their production. (Order at 3 n.1; Reddy Mem. at 1-2.) Reddy's cursory objection in this regard, made virtually in passing, not the subject even of a point heading in its brief, and supported by no clear legal or factual analysis, is not remotely sufficient to establish that the experienced Magistrate Judge's determination on this highly fact-specific question, which is owed "substantial deference" by this Court, was an abuse of the "broad discretion" accorded to Magistrate Judges' rulings on matters of this sort. Dubin v. E.R. Hutton Group Inc, 125 F.R.D. 372, 373 (S.D.N.Y. 1989) (quotation omitted).

2

2966964, at *3 (N.D. Ill. Nov. 22, 2004) (holding documents privileged because "under Japanese law, documents reflecting communications between patent agents and clients are exempt from production"); VLT Corp. v. Unitrode Corp., 194 F.R.D. 8, 17-18 (D. Mass. 2000) (holding letter to *benrishi* privileged where "Japanese law would treat the [letter] as privileged" and where application of the privilege "would not be clearly inconsistent with important policies embodied in federal law" (quotation omitted)); see also Murata Mfg. Co. v. Bel Fuse Inc., No. 03 C 2394, 2005 WL 281217, at *2-*3 (N.D. Ill. Feb. 3, 2005) (holding, where parties stipulated that Japanese law controlled privilege issue, that Japanese law accorded privilege to *benrishi*-client communications). Reddy contends that these decisions are all incorrect.

The prevailing authority with respect to recognition of foreign privileges applicable to patent agents or attorneys holds that where a communication with a foreign patent agent or attorney involves a foreign patent application, "then as a matter of comity, the law of that foreign country is considered regarding whether that law provides a privilege comparable to the attorney/client privilege[,] . . . subject to any overriding U.S. policy considerations." Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., No. 95 Civ. 8833, 1998 WL 158958, at *1 (S.D.N.Y. Apr. 2, 1998); see also Wilhelmijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F. Supp. 1429, 1447 (E.D.N.Y. 1989) (where foreign patent agent communications "do not touch base with the United States[,] comity requires that they be given the same attorney-client privilege protection that they would be given abroad").[2]

---

[2] Some courts have ruled that foreign patent-agent communications are simply not subject to privilege. See Mendenhall v. Barber-Greene Co., 531 F. Supp. 951, 952-53 (E.D.N.Y. 1982) (discussing and rejecting this position). In its initial appeal to this Court, Reddy did not urge this position on the Court, and argued only that a privilege should not be extended to Japanese *benrishi* under the Bristol-Myers analysis. Reddy does argue, for the first time in its reply brief,

3

It is undisputed that Japanese law extends a privilege to documents created by *benrishi*, and has done so at least since an amendment to the Code of Civil Procedure of Japan ("Code") in 1998. As Judge Fox pointed out, and as Reddy does not dispute, Article 197(2) of the Code provides that a *benrishi* may refuse to testify about a fact that he should keep secret and that he learned in the exercise of his professional duties, and Article 220(4) permits any holder of a document to refuse to produce a document that contains matters exempt from disclosure under Article 197(2). (Order at 9.)

Reddy nevertheless argues that Judge Fox erred by failing properly to determine in sufficient detail whether the *benrishi*-client privilege is truly "comparable to the attorney/client privilege" as that phrase was applied in Bristol-Myers, and contends that Japanese privilege law differs from United States law in several critical respects. (Reddy Mem. at 2-3.) Reddy's arguments misconceive the nature of the analysis.

Contrary to Reddy's argument, Bristol-Myers does not hold that foreign privilege law must be totally congruent with American attorney-client privilege law (which itself varies from state to state and federal circuit to federal circuit) in order to be accorded comity. Since the laws of two different jurisdictions will rarely be in such accord, application of any such rule would be inconsistent with the basic notion of extending comity to foreign law. Rather, Bristol-Myers

---

that extending a privilege to Japanese patent agents that is not accorded to American patent agents under United States law violates fundamental American public policy. (Reddy Reply Mem. 8-9.) First, the Court is not required to consider an afterthought argument presented for the first time in a reply brief, and never presented to the Magistrate Judge below. (See Joint Letter of Jan. 24, 2005 at 11-13.) Second, the Court finds the argument unpersuasive and inconsistent with the weight of authority, and indeed with the unanimous weight of authority relating to Japanese *benrishi* subsequent to the 1998 amendment of the Code of Civil Procedure of Japan.

4

analyzed French law to determine whether the communications in question were truly *privileged*, under French law, in the sense in which attorney-client documents are privileged here. 1998 WL 158958, at *2-*3. Having determined that French law did not extend such protection to patent agents' communications, id., the Court had no need to decide whether American law should recognize a French privilege that did not, in fact, exist. This is a far cry from declining to recognize a foreign privilege that *does* exist because an American court finds the foreign privilege insufficiently analogous to Wigmore's conception of the common-law attorney-client privilege.[3]

Reddy's purported distinctions between American and Japanese privilege law are either irrelevant under this analysis, or inaccurate, or both. First, Reddy argues that the privilege accorded to *benrishi* is not limited to legal advice, but includes other confidential knowledge obtained in the course of his professional duties, and, indeed, that the privilege is not limited to *benrishi*, but encompasses other types of professionals as well. (Reddy Mem. at 3-4.) These are red herrings at best. That Japanese law also extends a privilege to, for example, pharmacists and midwives has no bearing on whether Japanese law privileges *benrishi* communications in a manner analogous to the American attorney-client privilege. And neither the fact that *benrishi* are privileged, under a different provision of the Code, from disclosing technological or

---

[3] This is not necessarily to say that the preliminary inquiry is solely into whether communications are privileged under foreign law, and that there is no force to the phrase "comparable to the attorney/client privilege." If foreign law extended a privilege to communications that bore no resemblance to the sorts of communications (such as those between attorney and client, priest and penitent, or husband and wife) that are protected by recognized Anglo-American privileges, different considerations might apply. But the instant case does not present any such issue; Reddy does not and could not contend that *benrishi*-client communications are not, in a general sense, "comparable" to attorney-client communications.

5

professional secrets, Code Art. 197(3), nor the fact that the precise contours of the privilege that focuses specifically on legal advice differ in some respects from those of our attorney-client privilege, has any bearing on whether the communications at issue here are privileged under Japanese law, or on whether that privilege is "comparable" to the attorney-client privilege.

Second, Reddy argues that the Japanese privilege lies with the legal professional, not with the client. (Reddy Mem. at 4.) Eisai persuasively argues that, to the extent the wording of the statute providing a testimonial privilege gives some color to this analysis, Japanese law does not in fact reach so illogical a result. (Eisai Mem. at 9-10; Katayama Decl. ¶¶ 10-12.) But whether or not Eisai has the better of this argument, the present case involves not testimony but document production, and it is clear from the plain meaning of the Japanese statute that *any* holder of privileged *documents* – including clients as well as *benrishi* – is permitted to withhold them. Code Art. 220(4); Murata, 2005 WL 281217, at *3 ("Grafting on to Article 220 a distinction based on whether the documents containing that confidential knowledge are in the hands of the attorney or patent agent or client makes no more sense under Japanese law than it would under American law.").

Third, Reddy argues that the privilege provided to *benrishi*-client communications by Japanese law is not absolute, but requires a balancing of the purposes of the privilege against the need for disclosure. (Reddy Mem. at 4-5.) This argument is at least relevant, since if true it suggests that to decide whether the documents in question are effectively privileged under Japanese law, an American court would need to perform the requisite balancing. But the submissions of Eisai's Japanese law experts, who contend that the privilege is indeed absolute when applicable, and that the cases relied upon by Reddy are cases finding exceptions to the

6

privilege (indeed, in some cases exceptions that apply under American law as well) rather than cases applying a balancing test to require disclosure of concededly privileged documents, are fully persuasive. (Katayama Decl. ¶¶ 14-19; Ross Decl., Ex. F, Judge Nagasawa Decl. ¶¶ 4-6.) Like Judge Fox, this Court concludes that Reddy's interpretation of the Code "is not supported by legal authority the parties submitted to the Court for its review and consideration." (Order at 9.)

Finally, Reddy argues that even if the documents in question are privileged under Japanese law, "retroactive" application of the privilege should be rejected as inconsistent with "overriding U.S. policy considerations." Bristol-Myers, 1998 WL 158958, at *1. (Reddy Mem. at 5-8.) Assuming for the sake of the argument that Reddy is correct that many of the documents at issue were created before 1998, and that the *benrishi*-client privilege did not exist in Japan before that date, see, e.g., Alpex Computer Corp. v. Nintendo Co., No. 86 Civ. 1749, 1992 WL 51534, at *2-*3 (S.D.N.Y. Mar. 10, 1992), Reddy's argument fails for two independent reasons. First, the argument was never presented to the Magistrate Judge below. (See Joint Letter at 11-13.) Indeed, in arguing that the documents were *not* privileged under Japanese law, Reddy specifically relied on legal authority that post-dated the documents' creation. (Joint Letter at 12-13.) The point is therefore waived. Mitchell v. City of New York, No. 01 Civ. 2760, 2005 WL 1572158, at *2 (S.D.N.Y. July 1, 2005); Grant v. Shalala, No. 93-CV-0124, 1995 WL 322589, at *2 (W.D.N.Y. Mar. 13, 1995).

Second, the Code specifically provides that the statute protecting documents is to be applied retroactively. (Eisai Mem. at 14; Masuda et al. Aff. ¶ 5; Katayama Decl. ¶ 23.) It is thus absolutely clear that documents created before 1998 are privileged under Japanese law.

7

Moreover, there is nothing offensive to fundamental principles of justice or of American public policy in applying current procedural law "retroactively." Application of current Japanese privilege law to Japanese documents created before 1998, in accord with the specific intentions of the Japanese Legislature, cannot upset any settled rights or intentions of the parties here, or otherwise raise any issue of fundamental justice. Such application in a purely domestic context would raise no serious constitutional issue. "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive power of the legislative and executive branches." United States v. Carlton, 512 U.S. 26, 30-31 (1994), quoting Pension Benefit Guar.Corp. v. R.A. Gray & Co., 467 U.S. 717, 733 (1984). The Japanese Legislature had such a legitimate reason: before 1998, there was little need for such a privilege, since there was no provision for document discovery in civil litigation; the privileges in question were adopted in connection with a broader reform providing for liberal discovery of documents – including, of course, those created before the reform, at a time when their confidentiality would have been assumed in any case. Unsurprisingly, federal courts have routinely applied the 1998 Japanese privilege to documents created before its enactment. See Knoll, 2004 WL 2966964, at *4; VLT, 194 F.R.D. at 13, 17.

One final, housekeeping note. The parties have filed a variety of documents relating to the present motion, including Reddy's memorandum of law and reply memorandum, under seal. Nothing in any of the legal memoranda remotely justifies the claim that they contain "highly confidential information," as is proclaimed on the cover of both of the Reddy memoranda. The same is true of the supporting affidavits and documents submitted in connection with the motion.

Public business, including civil litigation, is to be conducted in public, subject only to overriding needs for the protection of confidential information. To the extent possible, therefore, courts should require motions to be filed publicly, with sealing permitted only to the extent required to protect substantial interests in confidentiality. Accordingly, the Reddy legal memoranda, as well as the affidavits and exhibits filed in connection with the memoranda, shall also be unsealed and publicly filed forthwith.

## CONCLUSION

For the reasons stated above, defendants' objections to Judge Fox's Order of October 28, 2005, and their motion to modify that order are denied. It is further ORDERED that the following materials be unsealed forthwith:

1. Defendants' memorandum of law in support of this motion, dated November 15, 2005, the Declaration of Maurice N. Ross, dated November 15, 2005, and all attached exhibits; and

2. Defendants' reply memorandum, dated December 13, 2005.

SO ORDERED.

Dated: New York, New York
December 21, 2005

GERARD E. LYNCH
United States District Judge